

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00022-CR
_____

SONYA KAY HARGETT, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 09-0447X

Before Morriss, C.J., Moseley and Burgess, JJ.
Opinion by Justice Burgess

# OPINION

Sonya Kay Hargett pled guilty to the offense of driving while intoxicated. Pursuant to a negotiated plea agreement, the trial court placed Hargett on community supervision for a period of five years after it suspended both her sentence of ten years' imprisonment and an order to pay a $4,000.00 fine. Subsequently, the State alleged that Hargett violated a term and condition of her community supervision by ingesting methamphetamine and alcohol. The trial court found the State's allegation true, revoked Hargett's community supervision, and sentenced her to two years' imprisonment. On appeal, Hargett argues that the trial court erred in admitting the drug test results and the accompanying expert testimony. We agree. Consequently, we sustain Hargett's point of error and reverse the trial court's revocation of her community supervision.

This case involves the application of Article 38.35 of the Texas Code of Criminal Procedure, which provides,

> [A] forensic analysis of physical evidence under this article and expert testimony relating to the evidence are not admissible in a criminal action if, at the time of the analysis, the crime laboratory conducting the analysis was not accredited by the director [of the Texas Department of Public Safety] under Section 411.0205, Government Code.

TEX. CODE CRIM. PROC. ANN. art. 38.35(d)(1) (West Supp. 2014). Article 38.35 defines the term "criminal action" as "an investigation, complaint, arrest, bail, bond, trial, appeal, punishment, or other matter related to conduct proscribed by a criminal offense." TEX. CODE CRIM. PROC. ANN. art. 38.35(a)(2).

At Hargett's revocation hearing, Tommy Thompson, director of "THE Lab," "a DPS DEA registered laboratory that . . . specialize[s] in toxicology drug testing," testified that he performed

2

an analysis of a urine sample taken from Hargett. On the basis of Article 38.35, Hargett objected to the admission of both the laboratory report containing the drug test results and Thompson's testimony about the results. Hargett took Thompson on voir dire, established that the laboratory was "just registered through DPS," was "not . . . DPS certified," and had not been accredited by the director of the DPS. Hargett further established that the laboratory had not applied for such accreditation. In response, the State argued that Article 38.35 did not apply to the revocation proceeding because it was not a criminal action as defined by subsection (a)(2), but was instead "quasi civil in nature." The trial court agreed and overruled Hargett's objection. Over objection, Thompson testified that Hargett's specimen tested positive for methamphetamine, amphetamine, and ethyl glucuronide, a metabolite produced as a result of the consumption of alcohol.[1]

Hargett argues that the trial court erred in admitting both the drug test results and Thompson's testimony over her objection. A trial court errs in admitting evidence over a timely objection when its decision is so clearly wrong as to lie outside that zone within which reasonable people might disagree. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

The State concedes that "THE Lab" was not accredited by the director of DPS. Yet, the State argues (1) that Article 38.35 does not apply because community supervision revocations are merely administrative in nature, and (2) that a statutory exemption, providing that presumptive tests are not subject to Article 38.35, applies. We reject both arguments.

In making its first argument, the State ignores the Texas Court of Criminal Appeals' ruling in *Ex parte Doan*, which specifically found that "[c]ommunity-supervision revocation proceedings

_____

[1]Hargett obtained a running objection to the State's line of questioning about the drug test results.

are not administrative hearings; they are judicial proceedings, to be governed by the rules established to govern judicial proceedings." *Ex parte Doan*, 369 S.W.3d 205, 212 (Tex. Crim. App. 2012). The court reasoned that,

> aside from the burden of proof required to prove a community-supervision violation (preponderance of the evidence, which is lower than the burden of proof beyond a reasonable doubt that is required to prove a new criminal offense), there are few procedural differences between a Texas criminal trial and a Texas community-supervision revocation proceeding.

*Id.* at 210. Indeed, the result of a revocation proceeding is the commencement of a sentence for the underlying criminal offense. Because Article 38.35 defines a criminal action to include "punishment, or other matter related to conduct proscribed by a criminal offense," we find that it applies to community supervision revocation proceedings. TEX. CODE CRIM. PROC. ANN. art. 38.35(a)(2).

Next, the State argues that this case fits within a statutory exception which excludes from the definition of "forensic analysis"

> a presumptive test performed for the purpose of determining compliance with a term or condition of community supervision or parole and conducted by or under contract with a community supervision and corrections department, the parole division of the Texas Department of Criminal Justice, or the Board of Pardons and Paroles.

TEX. CODE CRIM. PROC. ANN. art. 38.35(a)(4)(E) (West Supp. 2014). We find that this exemption does not apply because (1) Thompson's analysis of the urine sample was not a presumptive test,[2]

---

[2]A presumptive test, sometimes referred to as a field test, merely determines the positive identification of certain drugs, but it "is not sufficient evidence of the presence of a controlled substance on which to base a conviction." *Smith v. State*, 874 S.W.2d 720, 724 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (O'Connor, J., dissenting) (citing *Curtis v. State*, 548 S.W.2d 57, 59 (Tex. Crim. App. 1977)). Here, the evidence did not arise from a presumptive test, but from a confirmatory test performed in a laboratory.

4

(2) the testing was not conducted by the community supervision and corrections department or any other agency listed in the statute, and (3) the State failed to establish that "THE Lab" was under contract with any of the agencies listed in the statute.[3]

We sustain Hargett's point of error and turn to the issue of harm. Because the erroneous admission of the drug test results was nonconstitutional error, we apply Rule 44.2(b) to conduct our harm analysis. *See* TEX. R. APP. P. 44.2(b); *see Potier v. State*, 68 S.W.3d 657, 662–63 (Tex. Crim. App. 2002). Under Rule 44.2(b), we disregard the error unless it affected Hargett's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial, injurious effect or influence on the outcome. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Here, the State alleged only one violation of the terms and conditions of community supervision. Thompson's testimony and the laboratory report, which should have been excluded, was the only evidence offered to show that Hargett had violated the terms and conditions of her community supervision. Accordingly, the admission of the subject evidence was harmful.

---

[3]Thompson testified that he believed "THE Lab" was under contract with Harrison County, but he was not certain that was the case.

5

We reverse the trial court's judgment revoking Hargett's community supervision and remand this case to the trial court for further proceedings consistent with this opinion.


Ralph Burgess
Justice

Date Submitted:     August 26, 2015
Date Decided:       August 31, 2015

Publish


6