**Opinion filed April 9, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00245-CR
_____

## JASON PADILLA, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause Nos. CR30131, CR29359, & CR29360**

## MEMORANDUM OPINION

Following a bench trial, the trial court found Appellant, Jason Padilla, guilty of three counts of sexual assault of a child, a first-degree felony (Cause No. CR30131), one count of indecency with a child, a second-degree felony (Cause No. CR29359), and one count of possession of a controlled substance, namely cocaine, in an amount less than one gram, a state-jail felony (Cause No. CR29360).[1]

---

[1]The causes were consolidated for trial. Appellant has appealed from each judgment of conviction, and they were originally docketed in our court as three separate appeals. However, pursuant to our inquiry

*See* TEX. PENAL CODE ANN. §§ 21.11(a)(1), (d), 22.011(a)(2)(A), (f)(1)(A) (West 2026); TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (b) (West Supp. 2025). The trial court sentenced Appellant to life imprisonment in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for all three counts in Cause No. CR30131, twenty years' imprisonment in the Institutional Division of the TDCJ in Cause No. CR29359, and two years' imprisonment in the state jail division of the TDCJ in Cause No. CR29360. The trial court ordered the sentences to run concurrently.

In what we construe as three issues, Appellant argues that the trial court abused its discretion in admitting extraneous-offense evidence over his Rule 404(b) and 403 objections and that the evidence is insufficient to support his conviction for possession of a controlled substance. *See* TEX. R. EVID. 403, 404(b). We affirm in part and reverse and render in part.

## I. *Factual and Procedural History*

Jill Smith,[2] twenty years old at trial, testified that her childhood was marked with violence and drug use in the home. When Smith was fifteen, her mother K.M. left, leaving her and her younger brother, T.P.,[3] in Appellant's care. After K.M.'s departure, Smith's relationship with drugs and with Appellant changed. Smith testified that she began using cocaine and marihuana with Appellant. Smith recalled that on one occasion, while she was still fifteen, Appellant gave her acid. Smith felt "loopy" after ingesting it and took Appellant's suggestion to lie down in his bed.

---

and following Appellant's request, our Cause Nos. 11-24-00246-CR and 11-24-00247-CR were consolidated into Cause No. 11-24-00245-CR for purposes of appeal.

[2]To protect the identity of the victim, we refer to her by the pseudonym given in the indictment, and we use initials to refer to her family members. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process"); *see generally* TEX. R. APP. P. 9.8 cmt. ("The rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

[3]T.P. is Appellant's biological son with K.M.

2

While Smith was intermittently unconscious, Appellant joined her in bed, and he placed her hand on his genitals. Smith testified that Appellant then denied that any such conduct had occurred.

The sexual abuse escalated after Smith turned sixteen. Smith estimated that she and Appellant began having sexual intercourse "two or three times a week." Smith testified that she and Appellant had an understanding that if she had sexual intercourse with Appellant, she would receive cocaine. Smith further testified that Appellant did not respond well when she refused his advances and described one incident during which she sustained a head injury requiring stitches. Smith said that, after refusing to have sexual intercourse with Appellant one morning before school, Appellant struck the back of her head with a coffee cup. Smith testified that sexual intercourse continued with Appellant after she turned eighteen until Smith made the decision to disclose the sexual abuse and to contact K.M.

Following Smith's outcry, Brown County Sheriff's Office (BCSO) Investigator Leighton Wyatt accompanied Smith to the residence that she shared with Appellant so that she could retrieve her personal belongings. Investigator Wyatt conducted a search of the home and observed that there were three bedrooms. One bedroom appeared to be occupied by a teenage boy. Another bedroom contained bunk beds and items strewn across the floor and the bunk beds. Investigator Wyatt noted the absence of a pillow on the bunk beds. In the master bedroom Investigator Wyatt observed both female and male clothing.

Investigator Wyatt testified that he also located a wooden box in the master bathroom vanity area containing a "trace[] amount" of a substance that field-tested positive for cocaine. The record does not establish whether the "trace[] amount" of substance found inside the wooden box or alleged cocaine residue in the "pen straw" underwent any confirmatory testing to establish it to indeed be cocaine. Plastic baggies and pictures of the wooden box and the area where the substance was found

were admitted into evidence; the envelope containing the substance was discussed and labeled as State's Exhibit No. 51, but it was not admitted into evidence; the State did not offer any laboratory-analysis reports, nor did it present a chemist or other expert to testify as to the weight or identity of the substance. Investigator Wyatt suspected drug use in the home based on the presence of "corner baggies" in the master bedroom, along with a scale and a pen that "looked like it was a straw to snort narcotics" found in an unspecified location inside the home. Investigator Wyatt also recovered two jars containing what he identified to be marihuana residue inside a drawer in the living room.

Following Appellant's arrest, Appellant provided a recorded statement to law enforcement during which he admitted to having a sexual relationship with Smith, but he asserted that it had occurred only after she was no longer a minor. Appellant explained that he had provided Smith with birth control when she was sixteen after learning she was already sexually active. Appellant claimed that soon thereafter, Smith propositioned him for sex. Appellant stated that he eventually agreed because she had been insistent, but he maintained that no sexual activity occurred until she became an adult. Appellant admitted to using cocaine and marihuana but denied providing cocaine to Smith or "trick[ing]" or "forc[ing]" Smith into having a sexual relationship. Appellant opined that Smith and K.M. were pursuing allegations against him so K.M. could obtain custody of T.P. and take "everything [he] own[ed]."

Appellant's post-arrest statement differed from his earlier recorded statement to police, which was also admitted into evidence. In the earlier statement, Appellant admitted to only sharing a bed with Smith, and Appellant denied any drug use or violence inside the home on his part, attributing any household conflicts to K.M.'s substance abuse.

BCSO Lieutenant Charles Woods testified that searches of Appellant's and Smith's cell phones produced evidence corroborating a sexual relationship both before and after Smith turned seventeen. Lieutenant Woods read aloud text messages in which Appellant suggested sex to reward Smith for getting an "A" in her high school science class. When Smith replied unenthusiastically, suggesting that they get ice cream instead, Appellant countered that they could "mix the two."

Other text messages admitted into evidence reflected repeated verbal abuse endured by Smith. In one exchange, during which time Smith was at the grocery store, Smith informed Appellant that an item was unavailable. Without provocation, Appellant texted Smith that she was wrong, "full of s--t," and needed to "leave [him] the f--k alone" before she "p---[-d]" him off. Back-to-back expletive-laden messages followed his demand that she return home. When Smith responded that she still had to "finish getting the groceries," Appellant replied that she was a "moron" and "a-----e," and warned her that if she returned home without everything he requested, he was going to "slap the s--t out of [her]."

Several witnesses also testified regarding the nature of Appellant's relationship with Smith after K.M. left the children in Appellant's care. Johnny Storey, Appellant's uncle and former employer, testified that Appellant admitted to having sexual intercourse with Smith but claimed he had waited until she was an adult. Storey observed that Appellant treated Smith as though she was his spouse rather than his daughter, noting Appellant's reliance on Smith for household responsibilities.

Brittany Bozeman, the wife of Appellant's close friend, testified that she had spent a significant amount of time with Appellant and Smith and observed an unusual parent-child dynamic. Bozeman testified that Appellant "would comment on the curvature of [Smith's] body," specifically noting that Smith's breasts had gotten larger and "how her hips had spread," which Bozeman remarked was

5

concerning. Bozeman also testified that on more than one occasion, Appellant became "explosively angry" in response to something innocuous said by Smith, "yelling and screaming at" Smith differently than an adult ordinarily would communicate with a child.

Two witnesses testified to Appellant's violent conduct inside the home. Ashley Spencer testified that she lived with Smith and K.M. after her father, K.M.'s ex-boyfriend, was incarcerated. K.M. began dating Appellant, who moved into the home and assisted with childcare. Spencer recalled multiple instances of physical aggression by Appellant. In one instance, Appellant had shoved Spencer's eight-year-old brother against a bunk bed. In another, Appellant struck Spencer's sister in the head with a small flagpole after she had gotten in trouble at school. Spencer testified that Appellant had also dumped a trash can over her grandmother's head once. In another incident, Appellant had gotten upset with both Spencer and Smith and was threatening to spank them when K.M. intervened. K.M. shielded them and Appellant hit her instead. Spencer did not testify to any physically abusive incidents involving her or Smith.

K.M. testified that she had struggled with substance abuse while raising Smith and T.P., which along with her volatile relationship with Appellant, contributed to her leaving home in November 2019.[4] K.M. described two incidents involving Appellant that resulted in her hospitalization. In the first incident, K.M. required stitches; her medical records were admitted into evidence. K.M. said she lied to doctors and said that she had tripped over her cat. K.M. testified that in actuality, Appellant had picked her up and thrown her down the hallway after getting agitated with her for "babying" their son, T.P. K.M. testified that years later, she was injured

---

[4]Correspondingly, Officer Jose Andres Contreras with the Early Police Department responded to an assault call on November 30, 2019. K.M. had a scratch on her face and "a big scratch . . . on [her] neck."

after she and Appellant had gotten into an argument because she had not been "laying in bed still enough" for him. He pushed her, and she fell and struck the door frame.

Stephanie Morgan, a former Brownwood Police Department detective with specialized training in domestic and sexual violence, testified regarding the cycle of violence in domestic violence cases. Detective Morgan explained that children who grow up exposed to such dynamics often experience abusive relationships later as adults.

At the close of evidence, Appellant moved for a directed verdict. Relevant to this appeal, Appellant argued that the State failed to prove that the substance recovered from Appellant's residence was, in fact, cocaine because a field test alone is insufficient evidence to prove the identity of a substance beyond a reasonable doubt. Appellant also challenged the evidence of his care, custody, or control over the alleged substance. The trial court denied the motion.

## II. *Evidence of Bad Acts*

In his first and second issues, Appellant argues that the testimony "from various witnesses concerning instances of where [Appellant] got angry or where he allegedly committed acts of domestic violence against other family members, [K.M.], and [Smith]" were admitted in violation of Rules 403 and 404(b) of the Texas Rules of Evidence. TEX. R. EVID. 403, 404(b).

### A. *Standard of Review*

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001). We will uphold a trial court's evidentiary ruling on appeal if it is correct on any theory of law that finds support in the record. *Gonzalez v. State*, 195 S.W.3d 114,

7

125–26 (Tex. Crim. App. 2006); *Dering v. State*, 465 S.W.3d 668, 670 (Tex. App.—Eastland 2015, no pet.).

To be admissible at trial, evidence must be relevant. TEX. R. EVID. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." TEX. R. EVID. 401; *Bluntson v. State*, 728 S.W.3d 87, 109 (Tex. 2025), *cert. denied*, No. 25-6476, 2026 WL 795116, at *1 (U.S. Mar. 23, 2026). "Evidence need not prove or disprove a particular fact by itself to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving a fact of consequence." *Bluntson*, 2025 WL 1322702, at *7 (first citing *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); and then quoting *Henley v. State*, 493 S.W.3d 77, 84 (Tex. Crim. App. 2016) ("Relevancy is defined to be that which conduces to the proof of a pertinent hypothesis—a pertinent hypothesis being one which, if sustained would logically influence the issue.")).

B. *Rule 404(b)*

Rule 404 of the Texas Rules of Evidence "regulates the admissibility of character conformity evidence—evidence of a person's character used to prove that he behaved in a particular way on a given occasion." *Id.* at *8 (first quoting TEX. R. EVID. 404(a)(1) (evidence of person's character "is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait"); and then quoting TEX. R. EVID. 404(b)(1) (Evidence of extraneous acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.")). Evidence that is solely used for the purpose of proving bad character is prohibited under Rule 404. *Id.* "In separating character conformity evidence from non-character evidence, Rule 404 incorporates the concept of relevance." *Id.* "Therefore, in the context of Rule 404, if character conformity evidence contributes even incrementally to a permissible non-character

8

inference, Rule 404 does not bar its admission." *Id.*; *see* TEX. R. EVID. 404(b)(2) ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.").

Because "Rule 404(b) is a rule of inclusion rather than exclusion," the rule excludes "only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (emphasis added) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000)). The exceptions listed in Rule 404(b) are neither mutually exclusive nor exhaustive. *Id.* For example, "evidence of other crimes or wrongs may be admissible if it tends to establish some elemental fact, such as identity, intent, or knowledge; tends to establish some evidentiary fact, such as motive, opportunity, plan, or preparation, leading inferentially to an elemental fact; or rebuts a defensive theory." *Gonzalez v. State*, 541 S.W.3d 306, 310 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990)). The issue of whether extraneous-offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *De La Paz*, 279 S.W.3d at 343. We must affirm the trial court's ruling if that ruling is within the zone of reasonable disagreement. *Montgomery*, 810 S.W.2d at 391. When the trial court determines that the evidence has independent relevance, the trial court may admit the evidence and, as here, instruct the jury that the evidence is limited to the specific purpose the proponent advocated. *Gonzalez*, 541 S.W.3d at 310.

At trial, the State argued that the objected-to evidence was admissible to explain the nature of Smith's relationship with Appellant. On appeal, the State further argues that this evidence may demonstrate how Appellant, as the abuser,

gained control over and was able to sexually exploit Smith into adulthood, resulting in a delayed outcry. We agree with the State.

Evidence of an extraneous offense or bad act is admissible to "illustrate the nature of the relationship between a defendant and the victim" and the reason a victim may delay their outcry. *See Arevalo v. State*, 675 S.W.3d 833, 848 (Tex. App.—Eastland 2023, no pet.); *see also Garrett v. State*, No. 05-13-00883-CR, 2015 WL 4751218, at *2 (Tex. App.—Dallas Aug. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (Under Rule 404(b)(2), "evidence of extraneous offenses or acts may be admissible to prove . . . the reason a sexual assault victim failed to report the assault promptly.").

Smith's testimony that Appellant had been physically abusive to her and that she had witnessed him be physically abusive to family members contextualizes the nature of their relationship and makes it more likely that her delayed outcry was not due to fabrication. *See James v. State*, 623 S.W.3d 533, 548 (Tex. App.—Fort Worth 2021, no pet.) (noting that "extraneous-offense evidence was probative of the nature of [appellant]'s abusive relationship with [the victim], showing the patterns of abuse and the power and control that he had over her"); *Hurst v. State*, No. 05-19-00747-CR, 2021 WL 3233868, at *6 (Tex. App.—Dallas July 29, 2021, no pet.) (mem. op., not designated for publication) ("Evidence of appellant's violent acts, therefore, made it more likely that [the victim's] delayed report was not due to fabrication."). The same can be said for K.M. and Spencer's testimony, which both depicted Appellant resorting to physical violence in the home as a means of controlling others.

Thus, this testimony concerning Appellant's prior acts of violence in the home was not solely offered to show character conformity. Rather, the evidence went to a relevant, material issue—i.e., the nature of the relationship between Smith and Appellant—and was therefore admissible under this rule. We overrule Appellant's first issue.

C. *Rule 403*

Rule 403 of the Texas Rules of Evidence "excludes otherwise relevant evidence when the costs of admission outweigh its utility." *Hart v. State*, 688 S.W.3d 883, 891 (Tex. Crim. App. 2024). In accordance with the rule, "[t]he [trial] court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. Evidence is unfairly prejudicial when it has the undue tendency to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000); *Render v. State*, 347 S.W.3d 905, 921 (Tex. App.—Eastland 2011, pet. ref'd). We utilize the *Montgomery* factors in our determination of whether evidence is admissible under Rule 403: "(1) the strength of the evidence's probative value, (2) the potential for the evidence to 'impress the jury in some irrational but nevertheless indelible way,' (3) [t]he amount of time required at trial to develop the evidence, and (4) the proponent's need for the evidence." *Hart*, 688 S.W.3d at 891 (quoting *Montgomery*, 810 S.W.2d at 389–90). In any given case, "these factors may well blend together in practice." *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Rule 403 does not require that the balancing test be performed on the record. *Greene v. State*, 287 S.W.3d 277, 284 (Tex. App.—Eastland 2009, pet. ref'd). In overruling a Rule 403 objection, the trial court is assumed to have applied a Rule 403 balancing test and determined that the evidence was admissible. *Id.* Moreover, the balancing of these factors "is always slanted toward admission, not exclusion, of otherwise relevant evidence." *Irsan v. State*, 708 S.W.3d 584, 616 (Tex. Crim. App. 2025) (quoting *De La Paz*, 279 S.W.3d at 343); *Luna v. State*, 687 S.W.3d 79, 98 (Tex. App.—Eastland 2024, pet. ref'd) ("Rule 403 favors the

admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial.").

The first and fourth factors in the Rule 403 balancing test require that we identify the strength of the probative value and the State's need for the evidence, respectively. *See Hart*, 688 S.W.3d at 891. At the outset, we observe that apart from Smith, there were no witnesses to the sexual abuse alleged, and although Appellant admitted to having sex and engaging in sexual contact with Smith, he maintained that it had occurred outside the periods in the indictments, when she was no longer a minor, and he postulated that she was fabricating the sexual abuse so that her mother could gain custody of T.P. Moreover, while Lieutenant Woods testified to the existence of text messages evidencing a sexual relationship before Smith had turned seventeen, only messages exchanged after Smith was seventeen were admitted into evidence at trial. The objected-to evidence of Appellant's bad acts, therefore, provided a much-needed context for Smith's delayed outcry. *See, e.g.*, *James*, 623 S.W.3d at 548 (concluding extraneous offense evidence was probative of the nature of the appellant's abusive relationship with the victim, helping the jury understand why she remained in the relationship); *Jimenez v. State*, No. 05-18-00848-CR, 2020 WL 5104964, at *5 (Tex. App.—Dallas Aug. 31, 2020, no pet.) (mem. op., not designated for publication) (concluding that evidence of physical abuse in the household is relevant to explain why a victim may not come forward about sexual abuse until years later). In other words, the extraneous-offense evidence was important to the State's case, which relied on the credibility of the victim. Thus, these factors weigh in favor of admission.

Regarding the second factor, the phrase "unfair prejudice" in Rule 403 "refers to a tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Gigliobianco*, 210 S.W.3d at 641 (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). The indicted offenses and

12

circumstances in which the offenses were committed here are far more severe than the bad acts raised at trial. *See James*, 623 S.W.3d at 549 (weighing the seriousness of the bad acts alleged and the charged offense); *Williams v. State*, No. 06-24-00191-CR, 2025 WL 2217473, at *6 (Tex. App.—Texarkana Aug. 5, 2025, pet. ref'd) (mem. op., not designated for publication) (same). Here, Appellant was charged with sexually assaulting his stepdaughter, whom he had raised since the age of three, while she was often under the influence of drugs that he had supplied to placate her. Whereas, the bad acts alleged were all relatively minor physical assaults, aggravated by the comparatively petite stature of the victims. Moreover, any prejudicial effect of the extraneous-offense evidence was mitigated because the cases were tried to the trial court. *Jackson v. State*, No. 11-22-00222-CR, 2023 WL 8262758, at *6 (Tex. App.—Eastland Nov. 30, 2023, no pet.) (mem. op., not designated for publication) (citing *Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.)). "[W]hen a case is tried to a trial court rather than to a jury, the danger that the trier of fact will consider extraneous offense evidence for anything other than the limited purpose for which it is admitted is reduced, and the likelihood that the extraneous evidence will unfairly prejudice the defendant is diminished." *Corley*, 987 S.W.2d at 621. Accordingly, this factor favors admissibility.

The third factor focuses on "how much trial time was dedicated to the development of the evidence such that its introduction caused undue delay." *Hart*, 688 S.W.3d at 893 (citing *Montgomery*, 810 S.W.2d at 389–90). "[T]he time needed to develop the character evidence necessarily includes any testimony introduced regarding the evidence, including cross-examination, redirect examination, and any rebuttal offered by the defense in response to the evidence." *Id.* As Appellant notes, the objected-to testimony accounted for roughly nine pages out of approximately three hundred pages of testimony in the guilt/innocence phase. *See Luna*, 687 S.W.3d at 99 (concluding that the complained-of testimony, which consisted of

13

twenty-two pages out of the State's 180-page case-in-chief, was "only a small portion of trial" and could "hardly be deemed to be excessive"). The State made no mention of these bad acts in its closing argument. *See Inthalangsy v. State*, 634 S.W.3d 749, 759 (Tex. Crim. App. 2021) (reviewing the transcript of the State's closing argument in its Rule 403 analysis); *Price v. State*, No. 11-22-00195-CR, 2023 WL 6627127, at *5 (Tex. App.—Eastland Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication) (same). Thus, the time needed to develop this objected-to testimony was not disproportionate, and this factor weighs in favor of admission.

"In reviewing a trial court's determination under Rule 403, a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion.'" *See Espinoza v. State,* No. 11-19-00232-CR, 2022 WL 3903774, at *8 (Tex. App.—Eastland Aug. 31, 2022, pet. ref'd) (mem. op., not designated for publication) (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)). "It is only when there is a 'clear disparity' between the prejudice and the probative value of the offered evidence that Rule 403 envisions exclusion." *Boykin v. State*, No. 11-22-00126-CR, 2023 WL 5280804, at *8 (Tex. App.—Eastland Aug. 17, 2023, no pet.) (mem. op., not designated for publication) (quoting *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009)). We have considered all the aforementioned factors and conclude that no clear disparity exists here. *See Hart*, 688 S.W.3d at 891; *Gigliobianco*, 210 S.W.3d at 641–42. Therefore, the trial court did not abuse its discretion in admitting the extraneous-offense evidence. We overrule Appellant's second issue.

### III. *Sufficiency of the Evidence*

In what we treat as his third issue, Appellant challenges the trial court's denial of his request for a directed verdict and argues that the evidence was insufficient to support his conviction of possession with a controlled substance.

A. *Standard of Review and Applicable Law*

The denial of a motion for directed verdict is treated as a challenge to the sufficiency of the evidence before the trial court, and, as a result, we apply the same sufficiency review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Melendez v. State*, No. 11-22-00139-CR, 2024 WL 2194603, at *6 (Tex. App.—Eastland May 16, 2024, no pet.); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd).

In reviewing the sufficiency of the evidence to support a conviction, we must "consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the State has proven the essential elements of the crime beyond a reasonable doubt." *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024) (citing *Jackson*, 443 U.S. at 319). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (quoting *Jackson*, 443 U.S. at 319). Therefore, if the record supports conflicting inferences, the reviewing court must "presume that the factfinder resolved the conflicts in favor of the prosecution" and defer to the factfinder's factual determinations. *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) (quoting *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012)). "[A] reviewing court does not sit as the thirteenth juror and may not substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence." *Id.* (quoting *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007).

Under this standard, we consider all the evidence admitted at trial, including evidence that may have been improperly admitted, and treat direct and circumstantial evidence equally. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Isassi*, 330 S.W.3d at 638; *Starks v. State*, 684 S.W.3d 868, 873 (Tex. App.—Eastland 2024, no pet.); *Ruiz v. State*, 631 S.W.3d 841, 851 (Tex. App.—Eastland 2021, pet. ref'd). In this regard, it is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish the defendant's guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)); *Lee v. State*, 676 S.W.3d 912, 915 (Tex. App.—Eastland 2023, no pet.). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, we may not use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). But "juries trump both trial and appellate judges on weight-of-evidence determinations." *Evans v. State*, 202 S.W.3d 158, 164 (Tex. Crim. App. 2006) (citing *Jackson*, 443 U.S. at 326).

We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the essential elements of the offense as defined by the hypothetically correct jury charge." *Turley v. State*, 691 S.W.3d 612, 617 (Tex. Crim. App. 2024); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the

16

particular offense for which the defendant was tried." *Turley*, 691 S.W.3d at 617 (citing *Alfaro-Jimenez v. State*, 577 S.W.3d 240, 244 (Tex. Crim. App. 2019)). "The law authorized by the indictment consists of the statutory elements of the offense as modified by the indictment allegations." *Baltimore*, 689 S.W.3d at 341.

Here, Appellant was charged with possession of a controlled substance under Section 481.115 of the Health and Safety Code. *See* HEALTH & SAFETY § 481.115(a), (b). To support a conviction for this offense, the State was required to prove that Appellant intentionally or knowingly possessed less than one gram of a controlled substance listed in Penalty Group 1, namely, cocaine. *See id.*; *Starks*, 684 S.W.3d at 873. "'Possession' means actual care, custody, control, or management." PENAL § 1.07(a)(39) (West Supp. 2025). Thus, the State was required to "show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband." *Robertson v. State*, 636 S.W.3d 740, 745 (Tex. App.—Eastland 2021, no pet.); *Redman v. State*, No. 11-22-00057-CR, 2023 WL 4373534, at *3 (Tex. App.—Eastland July 7, 2023, no pet.) (mem. op., not designated for publication).

B. *Analysis*

Appellant advances two arguments on appeal: (1) "the evidence was insufficient to prove the substance recovered was in fact cocaine," and (2) the State failed to prove that Appellant possessed the substance.

The State's evidence concerning the identity of the alleged controlled substance consisted primarily of Investigator Wyatt's testimony that residue found inside a small wooden box in the master bathroom vanity appeared to be a "trace[] amount" of cocaine and that the substance field-tested positive for cocaine. Investigator Wyatt did not describe the physical characteristics of the substance, such as its color, texture, or form. Significantly, no laboratory results were admitted at trial, nor did a chemist testify as to the weight or identity of the substance.

17

On appeal, the State argues that while no laboratory report was offered into evidence and an expert did not testify as to the chemical makeup of the substance, the other evidence presented at trial collectively suffices to prove that the residue was cocaine: namely, the scale, "what appeared to be a pen tube," corner baggies, and a small "exacto knife blade" not mentioned at trial but seen in one of the photographs admitted at trial. The State, however, cites no authority supporting the proposition that a conviction for possession of a controlled substance may be sustained under facts materially similar to those presented here, and we have found none. Moreover, the Court of Criminal Appeals has previously held, though in the context of a revocation proceeding, that a field test and testimony from an "experienced narcotics officer" visually identifying a "white or brown powdered substance" as heroin was insufficient to prove the identity of the charged substance by a preponderance of the evidence. *Curtis v. State*, 548 S.W.2d 57, 58–59 (Tex. Crim. App. 1977); *see also Hargett v. State*, 472 S.W.3d 931, 934 n.2 (Tex. App.—Texarkana 2015, no pet.) ("A presumptive test, sometimes referred to as a field test, merely determines the positive identification of certain drugs, but it 'is not sufficient evidence of the presence of a controlled substance on which to base a conviction.'" (quoting *Smith v. State*, 874 S.W.2d 720, 724 (Tex. App. Houston [1st Dist.] 1994, pet ref'd) (O'Connor, J., dissenting))); *Foster v. State*, No. 07-02-00303-CR, 2003 WL 21705257, at *7 (Tex. App.—Amarillo July 23, 2003, pet. ref'd) (not designated for publication) ("Appellant is correct in arguing that even an experienced police officer, without other training, is not competent to testify as to the chemical composition of a substance because that is a matter for expert testimony."). The court reasoned that, unlike marijuana, many controlled *and* noncontrolled substances appear in white or brown powdered form and cannot be reliably distinguished without chemical analysis. *Curtis*, 548 S.W.2d at 59.

18

"To convict a defendant of a crime, the State must prove guilt beyond a reasonable doubt, but to revoke probation (whether it be regular probation or deferred adjudication), the State need prove the violation of a condition of probation only by a preponderance of the evidence." *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). It would therefore be incongruous to affirm a conviction based on evidence that would have been legally insufficient in a revocation proceeding. *See Curtis*, 548 S.W.2d at 59; *see, e.g.*, *Steele v. State*, 681 S.W.2d 129, 131 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd) (relying on the predecessor statute to the Texas Controlled Substances Act, the court held that the "State should have elicited testimony from the chemist to show that the white powder in question was cocaine, if so, and to show its weight, if any" and the officer's testimony was insufficient to prove that the substance delivered was cocaine).

Here, although Investigator Wyatt believed the substance to be cocaine, he could not unequivocally identify the substance as cocaine based on its appearance, nor could the results of the field test be used as conclusive evidence of the identity of the substance. *See Curtis*, 548 S.W.2d at 59; *see also Walker v. State*, No. 10-15-00381-CR, 2016 WL 5417456, at *2 (Tex. App.—Waco Sept. 28, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding that while an officer can testify to field tests performed and physical results, he could not testify that the substance was, in fact, an illegal controlled substance); *Mark v. State*, No. 08-00-00362-CR, 2001 WL 258620, at *4 (Tex. App.—El Paso Mar. 15, 2001, no pet.) (not designated for publication) (same). The substance did not have identifying characteristics such that it could be identified without the supporting testimony of a chemist or other expert. *See, e.g.*, *Curtis*, 548 S.W.2d at 59 ("[A]n experienced officer may be qualified to testify that a certain green leafy plant substance is marihuana."); *Furstonberg v. State*, No. 02-21-00078-CR, 2022 WL 5240473, at *3 (Tex. App.—Fort Worth Oct. 6, 2022, pet. ref'd) (mem. op., not designated for

publication) (hydromorphone pills had distinctive characteristics that allowed chemist to identify them using a reliable database); *Woods v. State*, No. 14-07-00940-CR, 2009 WL 1975547, at \*2, \*9 (Tex. App.—Houston [14th Dist.] July 9, 2009, pet. ref'd) (mem. op., not designated for publication) (chemist identified tablets as approximately 2,600 grams of dihydrocodeinone and approximately 417 grams of alprazolam by viewing the tablets to confirm the conformity of the shape, color, and logo and comparing them with pharmaceutical product information to identify the substance of the tablets). And while the remaining evidence—the presence of marihuana residue in the living room, a scale, corner baggies, an empty pen, and a knife blade—certainly suggest drug-related activity, without more, this evidence does not prove Appellant's possession of a controlled substance as alleged in the indictment. *See Curtis*, 548 S.W.2d at 59; *see, e.g., Jackson v. State*, 833 S.W.2d 220, 225–26 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd) (reversing appellant's possession of a controlled substance conviction where the substance was never analyzed, although there was evidence presented that appellant had been using cocaine, there was drug paraphernalia found inside the home, and she had just given birth to a stillborn who tested positive for cocaine).

Because the State failed to present legally sufficient evidence that the "trace[] amount" of a substance recovered was cocaine, the evidence is insufficient to support Appellant's conviction for possession of a controlled substance. Accordingly, we need not address Appellant's remaining sufficiency argument concerning whether he possessed the substance or independently address Appellant's directed-verdict claim. *See* TEX. R. APP. P. 47.1. We sustain Appellant's third issue.

## IV. *Modified Judgment*

Although not raised by either party, we note that the trial court's judgment in Cause No. CR29359 contains a nonreversible error. We have the authority to modify

20

and reform a trial court's judgment to make the judgment speak the truth when we have the necessary information to do so.  *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992).  Here, the trial court's judgment in Cause No. CR29359 recites that Appellant was convicted of "Indecency with a Child," and that the "Statute for [the] Offense" is "Penal Code §22.011."  The indictment alleges an offense described in Section 21.11 of the Penal Code, which is the statute for the offense of indecency with a child.  *See* PENAL § 21.11.  Therefore, we modify the trial court's judgment in Cause No. CR29359 to recite that Appellant was convicted under "Penal Code § 21.11."  *See, e.g.*, *Jacobs v. State*, 720 S.W.3d 217, 223 (Tex. App.—Eastland 2025, no pet.); *Deleon v. State*, No. 11-23-00163-CR, 2025 WL 1954215, at *6 (Tex. App.—Eastland July 17, 2025, no pet.) (mem. op., not designated for publication).

## V. *This Court's Ruling*

We affirm the trial court's judgment in Cause No. CR30131.  We affirm the trial court's judgment in Cause No. CR29359 as modified.  We reverse the trial court's judgment of conviction in Cause No. CR29360, and we render a judgment of acquittal in that cause.

W. BRUCE WILLIAMS
JUSTICE

April 9, 2026

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

21